**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

**KEVIN MILLER, PAMELA MILLER,**
**WAYNE MILLER, and ELSIE MILLER,**

**Plaintiffs,**

**v.** **No. 13-0585-DRH**

**FIRST BANK,**

**Defendant.**

**MEMORANDUM and ORDER**

**HERNDON, Chief Judge:**

## I. Introduction and Background

Now before the Court is defendant First Bank's motion for summary judgment (Doc. 14). Plaintiff opposes the motion (Doc. 24). Based on the record and the applicable law, the Court grants the motion for summary judgment.

On May 21, 2013, plaintiffs Kevin Miller, Pamela Miller, Wayne Miller and Elsie Miller filed a two-count complaint for breach of contract (Count I) and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq. (Count II) against First Bank in the Saint Clair County, Illinois Circuit Court (Doc. 2-2). On June 18, 2013, First Bank timely removed the case to this Court based on diversity jurisdiction, 28 U.S.C. § 1332 (Doc. 2-1).

This case arises out of the alleged wrongful foreclosure of real estate

mortgages and the alleged detention of personal property during a foreclosure case in which First Bank prevailed against the plaintiffs.[1] Plaintiffs allege that First Bank breached these contracts because it did not act in good faith or in fair dealing in the foreclosure and sale of the real estate that secured the notes and mortgages and in withholding plaintiffs' personal property from their possession. Further, plaintiffs allege that First Bank's conduct in seizing the real estate mortgaged to First Bank by plaintiffs and taking no action to reasonably dispose of the properties for nearly two years was unfair and/or deceptive and in violation of 815 ILCS 505/1 et seq.

## II. Facts

On June 30, 2004, the Kevin and Pamela Miller ("Millers") bought property at 1200 South Main Street, Red Bud Illinois ("convenience store"). To finance the purchase of the convenience store, the Millers took out the following:

(a) Mortgage loans from First Bank aggregating $367,398.00 ("First Bank Loans"). The First Bank Loans were evidenced by promissory notes in the amount of $287,398.00 and $80,000.00. The Millers granted first and second mortgages against the convenience store along with other collateral. In addition, Wayne and Elsie Miller ("parents") granted First Bank a mortgage against their property located at 1524 South Main Street, Red Bud, Illinois ("meat market") to secure payment of the First Bank Loans.
(b) a loan from the United States Small Business Administration in the amount of $239,000.00 ("SBA loan"). The Millers granted a third mortgage against the convenience store to secure payment of the SBA loan.
(c) a loan in the amount of $250,000 from Edward C. and Patricia A. Wagner ("Wagners"), the sellers of the convenience store, to pay part of

1 Kevin and Pamela Miller are married. Wayne and Elsie Miller are married. Wayne and Elsie are Kevin's parents.

the purchase price ("Wagner Loan"). The Millers granted a fourth mortgage against the convenience store to secure payment of the Wagner loan, and the parents granted a second mortgage against the meat market to secure payment of the Wagner loan.

The Millers occupied the meat market when the parents granted the mortgage against this property to First Bank. The Millers were purchasing the meat market from the parents pursuant to a contract for deed. The Millers defaulted in payments due under the contract in April 2009 and quit claimed their interest to the parents on July 17, 2009.

The Millers owned an Illinois corporation, Millers Countryside, Inc. ("Millers Countryside"). Millers Countryside operated the convenience store. On June 30, 2009, Millers Countryside stopped operating the convenience store because the business was not making enough money. In July 2009, the Millers surrendered possession of the convenience store to First Bank. At this time, the contents consisted of equipment and inventory owned by Millers Countryside. When the Millers surrendered possession of the convenience store to First Bank, they were in default of the First Bank Loans, the SBA loan, and the Wagner loan. These defaults were never cured.

On August 19, 2009, the Millers filed a voluntary petition under Chapter 13 of the Bankruptcy Code. The Millers' schedules list the First Bank loans as fully secured, unliquidated and undisputed.

On August 31, 2009, Millers Countryside filed a voluntary petition under Chapter 7 of the Bankruptcy Code. The Millers executed the bankruptcy petition

and schedules on behalf of Millers Countryside as its owners and operators. The bankruptcy case was closed on November 30, 2009, after the trustee filed report that no assets were available for distribution to creditors.

On October 2, 2009, the Bankruptcy Court granted First Banks' request for relief of the automatic stay provision and abandoned the convenience store in the Millers' bankruptcy case. The Millers' bankruptcy plan, as amended, proposes to surrender "any and all right, title and interest in" convenience store to First Bank, to pay an estimated $16,448.00 on their unsecured claims of $313,858.41 or 5.2% over a five year period, and that all the property of the bankruptcy estate will revest in them upon confirmation, ""subject to the rights, if any, of the Trustee to assert a claim of additional property of the estate acquired by [the Millers] post-petition pursuant to 11 U.S.C. 1306." The Bankruptcy Court confirmed the plan on March 15, 2010.

On December 11, 2009, First Bank filed a foreclosure action against the plaintiffs in the Randolph County, Illinois Circuit Court. The Millers and parents were represented by counsel in this case. The parents asserted an affirmative defense "that they did not understand the meaning and consequences of their entering into agreements represented by" the mortgage they granted to First Bank. The parents withdrew the affirmative defense. On April 12, 2011, the Randolph County, Illinois Circuit Court entered judgment in favor of First Bank and against plaintiffs. The judgment provided, *inter alia*, for the sale of the convenience store and the meat market if plaintiffs did not exercise their redemption rights on or

before July 12, 2011.

Plaintiffs did not exercise their redemption rights. Both the convenience store and the meat market were sold at foreclosure sale in the Randolph County, Illinois Circuit Court on July 21, 2011. Norman L. Roy purchased the convenience store for $248,800.00 and the Wagners purchased the meat market for $185,762.00. The amounts due on the mortgages against the meat market and the convenience store at the time of the foreclosure sale were: First Bank - $442,795.82; SBA - $228,248.94; Wagners - $230,583.34 for a total of $901,628.10. This left a deficiency of $8,233.82 on the First Bank loans and resulted in no payment on the remaining loans. The Randolph County, Illinois Circuit Court confirmed the foreclosure sale on August 16, 2011. Plaintiffs did not seek further relief in the foreclosure action.

According to the Millers' amended bankruptcy Schedule A, the value of the convenience store was $443,000.00. According to Wayne Miller, the value of the meat market at the time of the foreclosure sale was $80,000.00.

Plaintiffs never received a firm offer for the purchase and sale of the convenience store or the meat market and never presented such an offer to First Bank prior to the confirmation of the sale. Plaintiffs never offered the meat market for sale or otherwise attempted to sell the meat market. First Bank had several people or entities contact it about purchasing the convenience store including, John McDaniel, attorneys Rau & Cooper had two clients interested and Joe Koppia. Further, Kevin sent the bank names of several potential buyers and

written permission to discuss the sale with them as required by First Bank. The Millers contacted the Casey Store chain. First Bank officer Stuart Langher told the Millers that they had to turn over the contact information to him and he would take it from there. Langher never did anything to sell the properties.

**III. <u>Summary Judgment</u>**

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). All facts, and any inferences to be drawn from them, must be viewed in the light most favorable to the non-moving party. *Wis. Cent., Ltd. v.* Shannon, 539 F.3d 751, 756 (7th Cir. 2008). Thus, in order to withstand a motion for summary judgment, the nonmoving party must show that a dispute about a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The nonmoving party may not merely rest upon the allegations or details in his pleading, but instead, must set forth specific facts showing there is a genuine issue for trial. *See Celotex,* 477 U.S. at 322; *Anderson,* 477 U.S. at 248.

## IV. Analysis

Initially, First Bank argues that *res judicata* bars plaintiffs' claims in this lawsuit because plaintiffs' claims arise out of facts that could have been presented as defenses and/or counterclaims in the foreclosure suit. First Bank argues that the Millers' knew of First Bank's alleged efforts to deter a potential buyer before the sale of the properties occurred, thus, plaintiffs could have and should have raised these claims in the foreclosure suit as defenses or set offs. Plaintiffs counter that they were not involved in an "identical" cause of action even though plaintiffs may have been able to assert their claims as counterclaims in the foreclosure or as objections to confirmation of the foreclosure suit they were not required to do so under Illinois law. Specifically, the Millers argue that they are not contesting the foreclosure of the mortgage lien or their liability on the notes and have not asserted any rights to the property itself. The Millers contend that they are seeking money damages rather than recession and restitution.

The doctrine of *res judicata,* also known as claim preclusion, prevents relitigation of matters that were fully litigated in an earlier suit that resulted in a judgment on the merits. *Groesch v. City of Springfield,* 635 F.3d 1020, 1029 (7th Cir. 2011). Because of the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give a state court judgment the same preclusive effect that the court rendering the judgment would give it. *Haber v. Biomet, Inc.,* 578 F.3d 553, 556 (7th Cir. 2009); *Licari v. City of Chicago,* 298 F.3d 664, 666 (7th Cir. 2002). Thus, when examining whether an Illinois court judgment bars a federal lawsuit because

of *res judicata* the Court looks to the preclusive effect an Illinois court would give the judgment in question. *Groesch,* 635 F.3d at 1029; *Licari,* 298 F.3d at 666.

Under Illinois law, *res judicata* applies if the prior decision (1) was a final judgment on the merits rendered by a court of competent jurisdiction, (2) involved the same parties or their privies, and (3) constituted the same cause of action as the current suit. *Nowak v. St. Rita High Sch.,* 197 Ill.2d 381, 258 Ill.Dec. 782, 757 N.E.2d 471, 477 (Ill. 2001); *People ex rel. Burris v. Progressive Land Developers, Inc.,* 151 Ill.2d 285, 176 Ill.Dec. 874, 602 N.E.2d 820, 825 (Ill.1992); *Groesch,* 635 F.3d at 1029.

Illinois uses a transactional approach to determining whether different claims constitute the same cause of action for *res judicata* purposes. *River Park, Inc. v. City of Highland Park,* 184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.E.2d 883, 893 (Ill.1998); *see Garcia v. Village of Mt. Prospect,* 360 F.3d 630, 637 (7th Cir. 2004).[2] Under the transactional approach, "separate claims will be considered the same cause of action for purposes of res judicata if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park*, 234 Ill.Dec. 783, 703 N.E.2d at 891; *accord Rodgers v. St. Mary's Hosp.,* 149 Ill.2d 302, 173 Ill.Dec. 642, 597 N.E.2d 616, 621 (Ill.1992)(*res judicata* bars suit if "the same facts were essential to maintain both actions" or if "a single group of operative facts gives rise to the assertion of relief"). As a corollary to this rule,

2 In 1998, the Illinois Supreme Court abandoned the "same evidence" test. *See River Park*, 234 Ill.Dec. 783, 703 N.E.2d at 893.

Illinois observes the doctrine of merger and bar which precludes the relitigation not only of claims that were *actually* litigated but also claims that *could have been* litigated. *People ex rel. Burris,* 176 Ill.Dec. 874, 602 N.E.2d at 825; *River Park,* 234 Ill.Dec. 783, 703 N.E.2d at 889 *see Garcia,* 360 F.3d at 639. Whether counterclaims are permissive or mandatory is irrelevant to the scope of the preclusive effect of a final judgment. *Corcoran–Hakala v. Dowd,* 362 Ill.App.3d 523, 298 Ill.Dec. 516, 840 N.E.2d 286, 293–294 (2005). Under Illinois law, any claim that could have been brought, whether it had to be or not, is barred by *res judicata,* if the doctrine applies. *See id.*

Here, the record is clear and the parties do not dispute that there was a final judgment in the foreclosure action and that the same parties are involved in both actions. Thus, the question is whether plaintiffs' claims here arise out of the same operative facts as the foreclosure suit. Based on the following, The Court finds that they do.

The complaint at bar alleges:

> 6. Following the filing of the Complaint to Foreclose and prior to judgment and public auction sale of the real estate on July 21, 2011, Plaintiffs presented multiple potential purchasers for the land to Defendant's agents.
>
> 7. Defendants, by its agents, refused to discuss selling the real estate with any of the potential purchasers who would have and could have purchased the real estate at a price sufficient to satisfy the balance owed by Plaintiffs to Defendants; to provide additional sums to Plaintiffs from sale price; and to save interest, late fees and various expenses and attorney's fees which were deducted from the sale price.
>
> 8. Defendant took no action to sell the mortgaged premises until the public auction sale of the premises on July 11, 2011.

> 9. Defendant did not have a security interest in the personal property and the denial of access to said personal property was without authority of any kind.
>
> …
>
> 12. Defendant is in breach of all these contracts because it has not acted in good faith and fair dealing in the foreclosure and sale of the real estate which secured the notes and mortgages and in withholding the Plaintiff's personal property from their possession.

(Doc. 2-2 pgs. 2-3). Clearly, these allegations could have been and should have been raised as defenses to the foreclosure lawsuit and or as objections to the confirmation of the foreclosure sale.[3] *See, e.g., Commercial Credit Loans, Inc. v. Espinoza*, 293 Ill. App. 3d 923, 927 (Ill. App. 1997) ("A court is justified in disapproving a judicially mandated foreclosure sale if unfairness is shown which is prejudicial to an interested party. … "); *See, e.g., Whitaker v. Ameritech Corp.*, 129 F.3d 952, 956–57 (7th Cir.1997) (Illinois consumer Fraud and Deceptive Trade Practice Act claims were barred by *res judicata* because fraud defense not raised in the foreclosure proceeding in state court); *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1235-36 (7th Cir. 1986)(former defendants barred from bringing claim that would have been complete defense to prior action). Plaintiffs neither raised them in the foreclosure proceeding nor objected to the confirmation of the sale of the real estate properties. Clearly, the Court finds that *res judicata* does bar this litigation as the claims contained in plaintiffs' complaint

---

3 735 ILCS 5/15–1508(b) of the Illinois Mortgage Foreclosure Law provides in part: the trial court shall confirm a foreclosure unless: (1) there has been a failure to give proper notice; (2) the terms of sale were unconscionable; (3) the sale was conducted fraudulently; or (4) justice was otherwise not done.

arose out of the same group operative facts contained in the foreclosure case. As this decision is dispositive of plaintiffs' case, the Court need not address the remaining arguments for summary judgment.

## V. Conclusion

Accordingly, the Court **GRANTS** First Bank's motion for summary judgment (Doc.14). The Court enters judgment in favor of First Bank and against Kevin Miller, Pamela Miller, Wayne Miller and Elsie Miller. Further, the Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same.

**IT IS SO ORDERED.**

Signed this 26th day of September, 2014.

Digitally signed by David R. Herndon
Date: 2014.09.26 08:50:03 -05'00'

**Chief Judge**
**United States District Court**